(C. D. 451)

D. H. ARMAGHANIAN ET AL. *v.* UNITED STATES

# United States Customs Court, Second Division

(Decided March 17, 1941)

Barnes, Richardson & Colburn (Eugene F. Blauvelt of counsel) for the plaintiffs.
Charles D. Lawrence, Acting Assistant Attorney General (Richard F. FitzGibbon, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

TILSON, Judge: The question involved in these four suits against the United States is the proper classification of certain imported merchandise upon which duty was levied at 55 per centum ad valorem under paragraph 1205 of the Tariff Act of 1930. Plaintiffs claim the merchandise to be properly dutiable at 30 per centum ad valorem under paragraph 1205 of said act and T. D. 48093 as silk bolting cloth, not specially provided for, or free of duty under paragraph 1626 of said act, as bolting cloths composed of silk, imported expressly for milling purposes, and so permanently marked as not to be available for any other use.

Since counsel for the plaintiffs have offered no evidence or argument tending to bring the merchandise within the provisions of said paragraph 1626, we shall consider as waived the claim for free entry under said paragraph 1626, and confine our consideration to the claim of 30 per centum under said paragraph 1205 and T. D. 48093.

At the beginning of the trial and without objection the record in United States v. Armaghanian, 27 C. C. P. A. 170; C. A. D. 81, was admitted in evidence as a part of the record herein. In affirming the judgment of this court in that case and holding the merchandise to be properly classifiable as silk bolting cloth, not specially provided for, the appellate court took occasion to quote the following from the record in that case:

Q. How long have you been in this business, Mr. Armaghanian?—A. In this this particular line of silk business, you mean?

Q. All right, limit it to that.—A. I have been in the silk business for the last twenty years; before I came to this country.

Q. What do you include in your classification of silk business?—A. Well, I have in the Old Country I had dress goods as well as cloth for bolting purposes for making sifters and screens.

Q. Do you now import bolting cloth?—A. That is my main business.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. I will ask you: What is the cloth covered by this invoice in suit?—A. It is bolting cloth.

Q. Is that cloth used for bolting or sifting?—A. It may be used for bolting or sifting; it may be used for passing through liquids or paints or dyes or any liquid or near liquid or in powder form.

Q. Will you please state whether or not the merchandise in suit is all silk?—A. It is all pure silk.

Q. Is it sized or unsized?—A. It is natural.

Judge Dallinger. What do you mean by "natural?"

The Witness. Not sized: it is natural.

Judge Dallinger. That is what he asked you, whether it was sized or unsized.

By Mr. Carter.

Q. Do you know whether the merchandise in suit is gauze woven?—A. I don't understand what you mean by "gauze woven."

Q. Do you know the meaning of the word "leno?"—A. No; I do not. "Leno" means line.

Q. Do you know the meaning of the term "line woven?"—A. It means "line woven."

Q. Is the merchandise in suit leno woven?—A. Yes; line woven.

Q. Do you know whether the merchandise in suit is bleached?—A. No.

Q. You don't know?—A. I don't know whether it is bleached or not.

Q. Have you ever followed the sale of the merchandise in suit into consumption and seen it used?—A. Yes.

Q. How have you seen it used?—

\*　　\*　　\*　　\*　　\*　　\*　　\*

A. It is always used on screens. It is made into a frame, always put on a frame. Otherwise, they could not use it. It is not good for anything else.

Judge Dallinger. You mean you have seen it used that way in this country?

The Witness. Always.

Judge Dallinger. I say you mean you have seen it used that way in this country?

The Witness. Yes, sir; always.

By Mr. Carter.

Q. For what purpose have you seen it used?—A. I have seen it being used for passing through pigments in the form of paint. I have seen it used for straining syrup. I have seen it being used for straining paint and other things in order to get it fine, even get liquid out of it. Almost every shop that does that kind of painting has it. They have special screens made out of it to pass the paint through before they start painting.

Q. You spoke of sifting pigments in the form of paint. Is that a dry mixture?—A. It may be mixed with paint. It may be mixed with water colors. It may be anything at all.

Q. Is it dry or wet?—A. It is in a dry condition, but I have also seen them make sample paints with paper. They put black paper on the table and with different designs and they put the screen on it and with the paper they get the impression to check it with the design, whether it is correct or not.

Q. Have you ever seen the merchandise in suit used for the process of screen painting?—A. In screen painting, yes.

Q. When you ordered the merchandise in suit what did you order?—

\*　　\*　　\*　　\*　　\*　　\*　　\*

A. I ordered it as bolting cloth. \*　\*　\*

Q. Under what name or names do you sell this merchandise in suit?—

\*　　\*　　\*　　\*　　\*　　\*　　\*

A. I sell it as bolting cloth, or sometimes we call it stencil cloth. *It is bolting cloth for stencil. They are the only two forms and two names we use in the trade.* [Italics supplied.]

By Mr. Carter.

Q. I believe you stated you have been familiar with bolting cloth for twenty years; is that correct?—A. Yes.

Q. What are the requirements of bolting cloth? What physical requirements must it meet?—A. The bolting cloth must be of pure silk. It must have a certain degree of strength. I mean it must be strong. And it must be non-sagging. That means it must stay right whether it is wet or dry; I mean as far as physically possible.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. To go back again to the requirements or the requisites of bolting cloth, is there any special requirement as to the uniformity of the spaces or the intercises [interstices] between the thread?—A. Yes. All bolting cloth, no matter what kind of weave, they all come in certain numbers according to the count per inch, or per linear inch, or per centimeter—sometimes it is per centimeter. The certain number corresponds to the certain count.

In addition to the above testimony we have that of another witness who for 15 years has been president of a corporation engaged in importing and selling in the United States bolting cloth and various materials used in the several industries where bolting cloth is used. With reference to the manufacture and characteristics of bolting cloth, this witness testified as follows:

Q. You testified, I believe that the threads must be twisted. What do you mean by that?—A. *The threads must be twisted in order to avoid shifting or spreading.* They have two characteristics so if the thread is twisted it will form sort of a lock between what we call the warp and the weft, so they cannot shrink. At the same time, it will allow the silk to shrink considerably more than if they were not twisted which in turn then makes the silk very taut. And when it is taut and wetted on the frame, it remains in such tautness.

Q. Is there any characteristic of the weave of bolting cloth that distinguishes it from other cloths?—A. Well, the characteristics, we might say, are principally in distinguishing the amount of meshes, or openings, or spaces, between each thread in the warp and weft.

Q. Is there any requirement that *the weave must be such as to prevent slipping of the threads or a change in the size of the meshes?*—A. Yes; *that is done through the twist which I have mentioned before.* [Italics ours.]

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

\* \* \* Bolting cloth is constructed of raw silk fibers which are twisted into threads, and then constructed in such a manner that leaves definite openings according to the screens which is required, making a strong fabric which is taut on a frame. In order to keep that tautness, it is then wetted. Once it has reached that tautness it remains in such tautness. That is the only way that bolting cloth can be used.

The witness then testified that there are specifications of all the merchandise he has purchased as to the number of meshes or spaces per square inch of the cloth. "Every number is a designation of the number of meshes." In the process of stretching bolting cloth on frames, the silk is mounted on a frame by means of staples or tacks and then as moderate an amount of stretching is done as is physically

possible, to give it a taut surface. It is then subjected to warm water and then to cold water which shrinks the cloth and this brings it into a state where it is taut like a drum, after which it will remain in that particular state of tautness for the duration of its use.

Counsel for the defendant examined this witness at some length concerning certain statements appearing in a publication, "Screen Process Production," by Harry L. Heitt, and with particular reference to the following statement appearing therein:

While it is considered most economical in the long run to use genuine silk bolting cloth when a high quality of processed work is desired, the large initial investment necessary to defray the cost of the bolting cloth sometimes prohibits its general use in the small screen-process studios.

In view of the following statement by the appellate court in the *Armaghanian* case, *supra*, we do not feel that the statements contained in the above publication have any particular bearing on the question before us:

It will be observed that the term "silk bolting cloth" is a designation by use of the character that ordinarily requires, when classification is being considered, testimony of chief use at the time the language was used and became effective. In other words, it would be necessary to prove a chief bolting use of the class of cloth to which the importation belongs on and prior to said date. For reasons hereinafter stated, we think the testimony of the one witness of the importer made a *prima facie* case, as found by the trial court.

In view of the above holding, with which we are in agreement, the classification of the merchandise in this case is made to depend upon the chief use of the class of cloth to which these importations belong on and prior to the effective date of the trade agreement under which claim is made, rather than upon the statements contained in Mr. Heitt's publication, "Screen Process Production." Under the above ruling even silk taffeta dress goods would be classifiable as silk bolting cloth, if it were satisfactorily established that such merchandise was chiefly used for bolting purposes at and prior to the effective date of the said trade agreement.

Counsel for the defendant seemed to be laboring under the impression that in order for silk cloth to be classified as silk bolting cloth it must be so woven that the warp threads are twisted around each other between two weft threads, and afterwards the next weft threads which are again crossed come to their first position, and this manipulation repeated indefinitely. Whether or not the silk cloth in these cases is to be classified as silk bolting cloth depends entirely upon whether or not the same belongs to that class of silk cloth which was on and prior to the effective date of said trade agreement chiefly used for bolting purposes, rather than upon any particular weave of the cloth.

Paragraph 1626 of the act of 1930 made provision only for "Bolting cloths composed of silk, imported expressly for milling purposes, and so permanently marked as not to be available for any other use." In the trade agreement with Switzerland, T. D. 48093, specific provision is made for "Silk bolting cloth, not specially provided for." This is an amendment of paragraph 1205 of the act of 1930, which provided for:

Woven fabrics in the piece, wholly or in chief value of silk, not specially provided for, 55 per centum ad valorem; woven fabrics in the piece, not exceeding thirty inches in width, whether woven with fast or split edges, wholly or in chief value of silk, including umbrella silk or Gloria cloth, 60 per centum ad valorem;

The said trade agreement specifically provides that the rates of duty made applicable to the merchandise provided for in said paragraph 1205 should be reduced from 55 and 60 per centum ad valorem to 30 per centum ad valorem, thus clearly recognizing that the merchandise originally provided for in said paragraph 1205 was used for bolting purposes, and of course, if such merchandise belonged to a class of cloth which was so chiefly used on and prior to the effective date of said trade agreement, it should be classified as "Silk bolting cloth, not specially provided for." This is made very clear by the analysis of the said trade agreement by the State Department on January 9, 1936, the date said trade agreement was signed, from which we quote the following:

Silk specialties.—Under paragraph 1205 there are dutiable three types of silk specialties of which Switzerland is the principal supplier are on which reductions of duty have been made. The most important of these is leno-woven silk cloth, commonly called bolting cloth.

Silk bolting cloth imported expressly for milling purposes is free of duty. Such cloth has, however, recently acquired important uses in textile printing and in the sign painter's art. For these purposes it is subject to duties of 55 or 60 per cent, depending on width. Over 40 requests were received by the Committee for Reciprocity information urging a reduction in these duties, and the agreement effects a reduction to 30 per cent irrespective of width. Switzerland supplies the bulk of the world demand for this specialty which is a fine silk fabric woven with almost microscopic precision of hard-twist organzie. None is produced in the United States. Imports from Switzerland of silk bolting cloth for milling purposes—bound on the free list—amount to upwards of $300,000 annually. Imports of the same cloth for the textile and sign painter's industries are not separately recorded, but are known to amount to only about 5 per cent of that for milling purposes.

It should be remembered that the above analysis was made with specific reference to said paragraph 1205 of the act of 1930, and specifically states that "silk bolting cloth for milling purposes" is bound on the free list, paragraph 1626. The only change made in paragraph 1626 was to bind the merchandise therein provided for on the free list.

The evidence in this case clearly shows that the merchandise here involved belongs to that class which was on and prior to the effective date of the said trade agreement chiefly used for bolting purposes, such as is described in the above analysis. It therefore falls squarely within the provision for "Silk bolting cloth, not specially provided for." We find nothing in the said trade agreement which even suggests that it was intended to provide only for silk bolting cloth which was gauze-woven. Quite the contrary appears to be true.

For the reasons hereinbefore stated all the merchandise which was assessed with duty at 55 per centum under paragraph 1205 of the Tariff Act of 1930 is held to be properly dutiable at only 30 per centum ad valorem under said paragraph, as amended by the trade agreement with Switzerland, T. D. 48093.

To the extent indicated the specified claim in said suits is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.